d/c

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
RICHARD POUX,

                    **MEMORANDUM & ORDER**

            Petitioner,

                    **12-CV-1362 (NGG)**

    -against-

Superintendent, Southport Correctional Facility,

              Respondent.

--------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

    Richard Poux brings this Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C.

§ 2254, attacking his convictions rendered in the New York State Supreme Court, Queens

County on December 6, 2006. He asserts five claims: (1) that the trial court erred in denying his

request to submit manslaughter in the second degree as a lesser included offense; (2) that his

conviction was based on insufficient evidence; (3) that the grand jury minutes detailing his

waiver of immunity should not have been admitted; (4) that the trial court erred in giving the jury

a "consciousness of guilt" instruction alone; and (5) that he received ineffective assistance of

counsel at trial. For the reasons set forth below, Poux's Petition is DENIED.

## I.    BACKGROUND

### A.    Facts

    On October 29, 2004, at the Hut Barbershop, 88-56 165th Street, Petitioner Richard Poux

got into an argument with Lawrence Ennett. Petitioner drew a handgun from his waistband,

struck Mr. Ennett in the head with it twice, and shot Mr. Ennett. Mr. Ennett died of the gunshot

wound to his head. (Decl. of Jonathan Edelstein re Pet. for Writ of Habeas Corpus (Dkt. 9)

("Decl.") at 1.)

1

## B.    Trial Court Proceedings

Petitioner was charged in the New York State Supreme Court, Queens County, with two counts of murder in the second degree, one count of Criminal Possession of a Weapon in the Second Degree, and two counts of Criminal Possession of a Weapon in the Third Degree. (Aff. in Opp'n to Pet.for Writ of Habeas Corpus. ("Aff. Opp'n") (Dkt. 12) at 2-3.)

Petitioner proceeded to trial before a jury. On December 6, 2006, Petitioner was convicted of manslaughter in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. (Pet. for Writ of Habeas Corpus ("Pet.") (Dkt. 1) at 1.) The court sentenced Petitioner, as a persistent felony offender, to concurrent indeterminate prison terms of twenty-five years to life for the first-degree manslaughter count and second-degree weapon-possession count, and an indeterminate term from three and one-half years to seven years for the third-degree weapon-possession count, to run consecutively to the other terms. (Aff Opp'n at 3.) Petitioner is currently incarcerated pursuant to this judgment. (Id. at 3.)

## C.    Direct Appeal

On May 15, 2009, Petitioner appealed his convictions to the New York Supreme Court Appellate Division, Second Department. (Id. at 3.) Petitioner argued: (1) that the trial court improperly denied his request to submit manslaughter in the second degree as a lesser included offense to the jury; (2) that the evidence at trial was insufficient to support his conviction of first-degree manslaughter; (3) that the trial court improperly admitted into evidence his waiver of immunity as part of his testimony to the grand jury; and (4) that the trial court gave an

insufficiently limiting consciousness of guilt instruction for the evidence that he presented a false alibi to the grand jury.[1] (Id. at 3-4.)

On January 12, 2010, the Appellate Division affirmed Petitioner's judgment of conviction. People v. Poux, 69 A.D.3d 766 (N.Y. App. Div. 2d Dept. 2010). The court held that "[s]ince the defendant did not request that the trial court charge manslaughter in the second degree as a lesser included offense, the court's failure to submit such offense to the jury for its consideration was not error." Id. at 767. The court also found that there was sufficient evidence to uphold the conviction. The court, however, modified Petitioner's sentence to allow the sentence for criminal possession of a weapon in the third degree to run concurrently with the other two sentences, resulting in a sentence of 25 years to life. Id. On July 7, 2010, Petitioner was denied leave to appeal to the New York Court of Appeals. People v. Poux, 15 N.Y.3d 777 (2010).

### D.    Motion to Vacate Judgment

On September 13, 2011, Petitioner moved in the New York State Supreme Court, Queens County, to vacate his judgment of conviction, or in the alternative, to reduce his conviction to manslaughter in second degree pursuant to New York Criminal Procedure Law § 440.10. (Def. Mot. to Vacate J. (Dkt. 14-1).) Petitioner argued that he had received ineffective assistance of counsel on the grounds that counsel had: (1) failed to request a charge of second-degree manslaughter to be submitted as a lesser included offense and (2) failed to request an interested witness charge as to the sole eyewitness to the crime. (Aff. in Supp. of Mot. Purs. to C.P.L. § 440.10 (Dkt. 14-1) at 1-2.)

---

[1] Petitioner also argued that at sentencing, the court erred by running the count of third-degree weapon possession consecutively to the count of first-degree manslaughter, and that his sentence was excessive. (Aff. Opp'n at 4.) These arguments are not pertinent to the instant Petition.

On December 12, 2011, the court denied Petitioner's motion. (N.Y. App. Div. Decision & Order of Dec. 12, 2011 (Dkt. 14-3) at 1-5.) The court first stated that Petitioner's motion did not conform to the statutory requirements of C.P.L. § 440.10 because it was not supported by affidavits or other evidence. (Id. at 3-4.) The court then reached the merits of Petitioner's claims and found that he had failed to demonstrate that there were no strategic or other legitimate explanations for counsel's actions. (Id. at 4-5.) Petitioner was denied leave to appeal this decision to the Appellate Division. (N.Y. App. Div. Decision & Order on Appl. (Dkt. 14-3).)

### E.     Petition for Writ of Habeas Corpus

On March 19, 2012, Petitioner submitted the instant Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. (Pet.) He asserts five claims: (1) that the trial court erred in denying his request to submit manslaughter in the second degree as a lesser included offense; (2) that his conviction was based on insufficient evidence; (3) that the grand jury minutes detailing his waiver of immunity should not have been admitted; (4) that the trial court erred in giving the jury a "consciousness of guilt" instruction alone; and (5) that he received ineffective assistance of counsel at trial. (Id.) Petitioner submitted a factual declaration and memorandum of law in support of the petition (Decl.), and Respondent submitted a memorandum of law in opposition. (Aff. Opp'n.)

## II.    HABEAS CORPUS STANDARDS

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar; and

(3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

### A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," meaning that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (internal quotation marks omitted). Petitioner has fairly presented and exhausted all of his claims in the state courts either by direct appeal or collateral review, and Respondent does not dispute this. (See Aff. Opp'n.) No issues of exhaustion arise in the instant petition.

### B. Procedural Bar

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (internal quotation marks omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."[2] Id. "[T]he adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself

---

[2] As an exception, a court may consider a procedurally barred claim on the merits if the prisoner demonstrates: (1) "cause" for failing to comply with the state procedural rule; and (2) "prejudice" from the procedural bar. Wainwright v. Sykes, 433 U.S. 72, 92 (1977).

a federal question." Id. (citation omitted). Thus, courts "have an independent duty to scrutinize the application of state rules that bar [its] review of federal claims." Id. at 468.

The state courts have denied all of Petitioner's present claims on the merits, and Respondent does not contend that any claim was rejected in the state courts on an independent and adequate state ground. (See Aff. Opp'n.) No issues of procedural default arise in the instant petition with regard to Petitioner's first four claims, while the possibility of a procedural bar is briefly discussed and rejected in the analysis of Petitioner's ineffective assistance of counsel claim. See Part III.E.1, infra.

### C. AEDPA Deference

If a state court reaches the merits of a claim asserted in a § 2254 habeas petition, the state's decision is reviewed under the deferential standard set forth in AEDPA. AEDPA provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S.

6

362, 413 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## III.    DISCUSSION

### A.    Failure to Submit the Lesser Included Charge to the Jury

Petitioner argues that he was deprived of his right to a fair trial and due process by the trial court's failure to submit the lesser included charge of manslaughter in the second degree to the jury. (Mem. in Supp. of Pet. ("Mem. Pet.") (Dkt. 10) at 4-5.) He contends that trial counsel did in fact raise this issue during the trial conference (Id. at 10), and also maintains that there is a reasonable view of the evidence that the handgun was shot accidentally. (Id. at 7.) The Appellate Division rejected this claim on the merits. People v. Poux, 69 A.D.3d 766 (N.Y. App. Div. 2d Dept. 2010). The Appellate Division's conclusion was not contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

7

New York Criminal Procedure Law § 300.50 states that "[i]n submitting a count of an indictment to the jury, the court in its discretion may . . . submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater."

The Court of Appeals has established a two-prong test to determine whether a defendant is entitled to a lesser-included offense charge. See People v. Glover, 57 N.Y.2d 61(1982). "First, defendant must establish that it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct. Secondly, there must be a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater." People v. Van Norstrand, 85 N.Y.2d 131,135 (1995). Under New York Penal Law § 125.15(1), second degree manslaughter has been recognized as a lesser included offense to second-degree murder. People v. Ivisic, 95 A.D.2d 307, 311 (N.Y. App. Div. 2d Dept. 1983). The inquiry therefore focuses on the second prong which asks whether there is "a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater." Van Norstrand, 85 N.Y.2d at 135.

### 1. No reasonable view of the evidence to support the lesser included charge

Petitioner claims that there is a "reasonable view of the evidence" to support the finding that he did not intentionally shoot Mr. Ennett, but instead acted recklessly by striking him with a loaded gun. (Mem. Pet. at 7.) The weight of the evidence, however, strongly demonstrates otherwise. The weapon could not be fired without first turning off the safety mechanism. (Trial Tr. (Dkt. 13-3) at 505.) A separate "drop pin safety mechanism" also prevented the firing pin from going forward to discharge the gun, unless the trigger was pulled. (Id. at 505-06.) The presence of soot around the deceased's wound indicated that the barrel of the gun was away from

the victim's head and aimed downwards when the shot fired, which discredits the theory that the weapon fired upon second contact with Mr. Ennett's head. (Trial Tr. (Dkt. 13-5) at 765-70.) Given the foregoing evidence, Petitioner's claim that the shot was fired accidentally is unconvincing and extremely difficult to sustain.

Moreover, there must be "some identifiable, rational basis on which the jury could reject a portion of the prosecution's case which is indispensable to establishment of the higher crime and yet accept so much of the proof as would establish the lesser crime." People v. Scarborough, 49 N.Y.2d 364, 369-70 (N.Y. 1980). Petitioner relies on People v. Licitra, 47 N.Y.2d 554 (N.Y. 1979), a case involving similar facts, where a conviction for manslaughter in the second degree was upheld. Licitra however only involved charges of manslaughter in the second degree and criminally negligent homicide. Id. at 557. The inquiry in Licitra was limited to whether the defendant's conduct amounted to reckless manslaughter, and did not consider whether the defendant in that case intended to shoot the victim, making him guilty of a more serious crime. Id. Licitra is therefore distinguishable and is not instructive for the present case.

In the absence of any "reasonable view of the evidence" establishing that Petitioner did not intend to shoot Mr. Ennett, the trial court "may not submit [the] lesser offense." C.P.L. § 300.50(1). See People v. Graham, 57 A.D.2d 478 (N.Y. App. Div. 4th Dept. 1977). There is therefore no need to consider the further question of whether the trial court's "failure to give such a charge was sufficiently harmful to make the conviction unfair." Jackson v. Edwards, 404 F.3d 612, 621 (2d. Cir. 2005).

### 2. A request to submit the lesser included offense was not made

The Appellate Division additionally found that "the defendant did not request that the trial court charge manslaughter in the second degree as a lesser included offense." People v.

Poux, 69 A.D.3d 766, 767 (N.Y. App. Div. 2d Dept. 2010). Under C.P.L. § 300.50(2), the trial court must submit a lesser included offense only when it is "requested by either party to do so." "In the absence of such a request, the court's failure to submit such offense does not constitute error." C.P.L. § 300.50(2). Petitioner contends that trial counsel did in fact request the lesser included charge during the charge conference. (Mem. Pet. at 10.) When the trial judge asked the prosecution for any requests to charge, the prosecution requested a charge of first degree manslaughter. (Trial Tr. (Dkt. 13-5) at 783.) Trial counsel questioned the factual basis of this charge, and the prosecution stated that there was a reasonable view that Petitioner intended to cause serious physical injury to Mr. Ennett. (Id. at 783-84.) Trial counsel then disputed that the shooting was intentional, stating: "If anything, the only lesser charge that would lie, I submit, would be manslaughter 2nd degree, which is recklessly causing death." (Id. at 784.) But when the trial judge asked trial counsel for any requests to charge, trial counsel did not make any request that manslaughter in the second degree be submitted as a lesser included offense. (Id. at 785-88.) The trial judge also gave trial counsel until the next morning to request any additional charges, but no such request was made. (Id. at 788.)

Under the deferential standards of AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner must show that the trial court's finding was "objectively unreasonable in light of the evidence presented in the state-court proceeding." 28 U.S.C. § 2254(d)(2). Miller-El, 537 U.S. at 340. It does not appear from the colloquy between trial counsel and the trial judge that the trial court's finding met the standard of being "objectively unreasonable", considering that there was no explicit and obvious request made by trial counsel to submit the charge of manslaughter

10

in the second degree to the jury. Petitioner's evidence is insufficient to overturn the Appellate Division's factual finding that manslaughter in the second degree was not requested as a lesser included offense. In the absence of a request to submit the lesser included offense, the trial court's failure to do so does not constitute error. See C.P.L. § 300.50(2).

Even if the request to submit the lesser included offense were explicitly made, the court may not accede to such a request in the absence of a "reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater". See § CPL 300.50(1). The trial court therefore did not err by not submitting the charge of manslaughter in the second degree to the jury.

### B. Insufficient Evidence

Petitioner claims that there was insufficient evidence to show that he shot Mr. Ennett intentionally. (Mem. Pet. at 17.) He relies on the testimony of Mr. Lee, the sole eyewitness, who only stated that the gun "went off" after Petitioner struck Mr. Ennett on the head twice. (Id. at 18.) Petitioner emphasizes that Mr. Lee's testimony did not indicate that Petitioner had intended to shoot, but instead suggested that the weapon was discharged accidentally. (Id.)

As stated in the discussion above, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner must show that the trial court's finding was "objectively unreasonable in light of the evidence presented in the state-court proceeding." 28 U.S.C. § 2254(d)(2). Miller-El, 537 U.S. at 340. Petitioner contends that "it was unreasonable for the state court to find that the evidence was legally insufficient to establish petitioner's guilt for manslaughter in the first degree." (Mem. Pet. at 21.)

11

A federal habeas defendant bears a "very heavy burden" on a sufficiency of the evidence claim. United States v. Losanda, 674 F.2d 167, 173 (2nd Cir. 1982). In considering Petitioner's habeas petition, this court is required to consider the trial evidence in the light most favorable to the state. See Jackson v. Virginia, 443 U.S. 307 (1979). This court must also defer to the jury's assessment of the evidence. Herrera v. Collins, 506 U.S. 390, 401 (1993). Petitioner's conviction must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). The ballistics and autopsy evidence indicated that there were two safety mechanisms preventing accidental discharge of the gun, and that the gun was away from the victim's head and pointed downwards when it was fired. Unlike in the case of People v. Rodriguez which Petitioner cited, there was no evidence of a struggle in the instant case. There was certainly at least a rational view that Petitioner intended to fire the shot, and this suffices under the standard enunciated in Jackson for the conviction to be upheld. Id. Part III.A.1 of the present discussion also went further to conclude that there was no "reasonable view" to the contrary. See Part III.A.1, supra.

In sum, Petitioner has failed to show that the trial court's finding was objectively unreasonable. Sufficient evidence was presented to warrant the trial court's conclusion that Petitioner had fired the shot at Mr. Ennett intentionally, and this was thus sufficient to prove "intent to cause serious physical injury" under the offense of manslaughter in the first degree. N.Y. Penal Law § 125.20(1).

## C.  Admission of Grand Jury Minutes on Petitioner's Waiver of Immunity

Petitioner makes a third claim that the trial court committed other evidentiary errors which deprived him of his constitutional right to due process. (Mem. Pet. at 30.) This claim is better addressed as two separate ones, the first being that Petitioner claims that the admission of

the minutes detailing his waiver of immunity before the grand jury deprived Petitioner of his right to a fair trial. (Id.) These minutes included his representation by counsel and consultation with counsel regarding the waiver of immunity. (Id.)

Petitioner fails to show that the admission of grand jury minutes "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The details of the waiver of immunity were not simply irrelevant as Petitioner claims (Mem. Pet. at 30), but were reasonably introduced as evidence of the voluntariness of the waiver, and also as evidence of his alibi of being outside New York City on the day of the fatal incident. Petitioner further asserts that the details of the waiver of immunity illustrated that he had consulted with his trial counsel, leading to the appearance that they had conspired to have Petitioner commit perjury before the grand jury, and destroying his counsel's credibility as a result. (Id.) The link between the premise and conclusion asserted here appears to be tenuous, as it precariously relies on the assumption that the jury inferred that trial counsel encouraged Petitioner to perjure himself from the mere fact of consultation with his counsel. As the minutes of Petitioner's waiver of immunity were reasonably introduced, this court finds that the admission of grand jury minutes did not deprive Petitioner of his right to a fair trial.

### D. Jury Instruction on Consciousness of Guilt

Petitioner contends that the trial court erred in failing to give a proper limiting instruction to the jury regarding the inference that could be drawn from Petitioner's false alibi in his grand jury testimony. (Id.) Petitioner claims that he denied that he was in Queens because this trip violated his parole, and he would have faced substantial prison time for this violation. (Id. at 30-31.) Allowing Petitioner to testify about this explanation would reveal to the jury the fact that

13

Petitioner was on parole at the time, and potentially open the door to discussion of his prior criminal record. (Trial Tr. (Dkt. 13-4) at 692). According to Petitioner, his counsel therefore could not reveal this plausible explanation without causing extreme prejudice to Petitioner. (Mem. Pet. at 30-31.)

The trial court's instruction to the jury did not involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). No Supreme Court precedent alludes to the constitutional concerns relating to limiting jury instructions on consciousness of guilt that Petitioner points to in the present case. The trial court clearly instructed the jury to "consider whether the conduct [had] an innocent explanation," and went on to state that "even an innocent person who finds himself under suspicion may resort to conduct which gives the appearance of guilt." (Trial Tr. (Dkt. 13-5) at 880.) The trial court's instruction also established in the minds of the jury that evidence showing consciousness of guilt was only to be attributed "slight value" and was not to be used alone as the basis for a finding of guilt. (Id.) Contrary to Petitioner's argument, the circumstances of this case did not warrant a more robust cautionary instruction akin to what the court required in Robinson v. Graham, 671 F.Supp.2d 338 (N.D.N.Y. 2009). Robinson involved testimony of a witness regarding an uncharged bribery offer, and the court found that such evidence was to be considered solely for the purpose of establishing a consciousness of guilt, and not for the defendant's propensity to commit bribery. Id. at 353. The court stated that the jury should have been instructed that the evidence was "no proof whatsoever that defendant possessed any propensity or disposition to commit any crime charged in the indictment, but may be considered solely on the issue of consciousness of guilt." Id. at 354. Although the jury instructions on the issue of consciousness of guilt in the instant case were substantially similar to the instructions

14

given in <u>Robinson</u>, <u>Robinson</u> is distinguishable. <u>See id.</u> In the instant case, Petitioner's consciousness of guilt was the only issue for the trial court, and Petitioner's false alibi bore no relation to his propensity to commit any crime for which he was charged. There was no need for the trial court to have instructed the jury not to consider the false alibi as proof that Petitioner possessed a propensity to commit murder or manslaughter. The trial court's instructions to the jury in this case were therefore not unreasonably deficient in limiting the inference that could be drawn from Petitioner's false alibi, and Petitioner was not deprived of his right to due process by any evidentiary error committed by the trial court.

### E.     Ineffective Assistance of Counsel

Finally, Petitioner argues that his trial counsel provided him with ineffective assistance, in violation of the Sixth Amendment as applied to the states through the Fourteenth Amendment. (Mem. Pet. at 21.) Petitioner's claim is not procedurally barred, but the state court's adjudication of the claim on the merits was not contrary to, or an unreasonable application of, clearly established federal law. <u>See</u> 28 U.S.C. § 2254(d).

### 1.     Procedural Bar

In ruling on Petitioner's motion to vacate the judgment on the grounds that he received ineffective assistance of counsel, the New York State Supreme Court, Queens County concluded that because "the defendant has not conformed to the statute and bases his assertions only on his own allegations without anything further . . . the motion may be denied without conducting a hearing." N.Y. App. Div. Decision & Order of Dec. 12, 2011 (Dkt. 14-3) at 3-4. In carrying out its "independent duty to scrutinize" whether the state court's decision is an adequate procedural bar to the assertion of the ineffective assistance claim, this court finds that Petitioner's claim is not procedurally barred. <u>Cone v. Bell</u>, 556 U.S. 449, 468 (2009).

15

New York Criminal Procedure Law § 440.30(4)—the provision on which the state court rested its conclusion that Petitioner's claim was procedurally barred—states: "Upon considering the <u>merits</u> of [a motion to vacate judgment], the court may deny it <u>without conducting a hearing</u> if . . . (b) [t]he motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts." (emphasis added.) Contrary to the state court's determination, § 440.30(4)(b) does not operate as a procedural bar to a movant's claims; rather, the provision permits the post-conviction court to rule on the merits of a motion to vacate without conducting a hearing, in the event that the movant fails to substantiate the facts alleged with sworn allegations or other evidence. <u>Lopez v. Graham</u>, 518 Fed. App'x 52 (2013). Section 440.30(4)(b) does not provide an independent and adequate state ground for denying federal review of Petitioner's ineffective assistance claim, and the court will proceed to the merits of the claim. <u>See</u> <u>Cone</u>, 556 U.S. at 467.

      2.    <u>Merits</u>

Ineffective assistance of counsel claims are governed by the Supreme Court's holding in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Williams</u>, 529 U.S. at 390. In <u>Strickland</u>, the Court established a two-prong test to determine whether a defendant's Sixth Amendment right to effective assistance of counsel is violated.

Under <u>Strickland</u>'s "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" <u>Greiner v. Wells</u>, 417 F.3d 305, 319 (2d Cir. 2005) (quoting

Strickland, 466 U.S. at 690). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Thus, a court must "not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside," or if the lawyer otherwise had "a reasonable justification for the decision." Greiner, 417 F.3d at 319 (internal quotation marks omitted).

Under Strickland's "prejudice" prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding;" rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693-94.

Establishing a claim for ineffective assistance of counsel is a "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]." Eze v. Sendkowski, 321 F.3d 110, 112 (2d Cir. 2003); see also Harrington, 131 S. Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (internal quotation marks and citation omitted)). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly"; instead, the petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002). "And, because the Strickland standard is a general standard, a state court has even more latitude

17

to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

Petitioner asserts two grounds for his ineffective assistance claim. He argues that counsel: (1) failed to request that the lesser charge of second-degree manslaughter be submitted to the jury (Mem. Pet. at 26), and (b) failed to request an interested-witness charge as to the sole eyewitness to the alleged crime. (Id. at 28). For the reasons that follow, neither of these assertions provides a basis for habeas relief.

a.     Failure to Request the Lesser Included Charge

Petitioner argues that the request to submit the lesser included charge of second-degree manslaughter was preserved by his trial counsel (see Part III.A, supra), but submits in the alternative that "if this Court finds that Petitioner's counsel should have made a more specific request to include the count, then it is clear that failure to do so can only be attributed to constitutionally ineffective assistance of counsel." (Mem. Pet. at 26.)

Petitioner's trial counsel may have rightly recognized that there was no "reasonable view of the evidence" under which the trial court could conclude that shooting was not intentional. See C.P.L. § 300.50. Furthermore, trial counsel's decision not to request a lesser included charge of second-degree manslaughter can be deemed to be a strategic one. See Ramdeo v. Phillips, 2007 U.S. Dist. LEXIS 49483 (E.D.N.Y. July 6, 2007.) Strategic choices made after thorough investigation of law and facts are "virtually unchallengeable." Strickland, 466 U.S. at 690. Contrary to what Petitioner argues (Mem. Pet. at 27), the existence of the lesser included first-degree manslaughter charge does not detract from the tactical nature of this decision. The tactical advantage existed not simply in avoiding juror confusion over disparate charges, but in that Petitioner would not be exposed to the risk of being convicted under the lesser included

charge of second-degree manslaughter if the jury were to acquit him of first-degree manslaughter. Petitioner's trial counsel therefore cannot be faulted "for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside," or if he otherwise had "a reasonable justification for the decision." Greiner, 417 F.3d at 319.

Whether or not there was a "potentially fruitful course of conduct" is also itself contentious. Under the second prong of Strickland, there must exist "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. As stated in Part III.A, supra, the court finds no "reasonable view of the evidence" upon which it can be found that Petitioner did not intend to shoot Mr. Ennett. The trial court would have been likely to convict Petitioner of first-degree manslaughter regardless, and Petitioner therefore fails to prove the existence of "a reasonable probability that . . . the result of the proceeding would have been different." Id.

b.    Failure to Request an Interested Witness Charge

Petitioner next argues that his trial counsel was ineffective for failing to request an interested-witness charge as to the sole eyewitness Mr. Lee. (Mem. Pet. at 28.) Petitioner contends that Mr. Lee had already obtained a $1,500 reward from CrimeStoppers for the information he had given, and stood to gain an additional $10,500 if Petitioner were convicted, thus Mr. Lee had a financial interest "in shading his testimony to ensure such a conviction." (Id.) Petitioner however does not dispute that these facts were made known to the jury. Petitioner's trial counsel questioned Mr. Lee extensively during cross-examination about this reward money and the reward poster (Trial Tr. (Dkt. 13-4) at 669-72), and also argued at length during counsel's closing arguments that in light of the financial interest involved, Mr. Lee's testimony was "not reliable." (Trial Tr. (Dkt. 13-5) at 822-24.) The court also instructed the jury that it

"may consider whether a witness had or did not have a motive to lie." (Id. at 879.) The court also stated that "[i]f a witness had a motive to lie, [the jury] may consider whether and to what extent, if any, that motive affected the truthfulness of that witness' testimony . . . ." (Id.)

This court agrees with Respondent that "the arguments by the counsel and the court's charge sufficiently impressed upon the jury the need to scrutinize the testimony of Mr. Lee." (Aff. Opp'n at 33.) On the "performance" prong of the Strickland test, this court therefore does not find that trial counsel was remiss in failing to request an interested-witness charge as to Mr. Lee, nor that trial counsel's representation "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

Although Mr. Lee was the only eyewitness to the shooting, another barber, Mr. Robinson also provided testimony that Petitioner was in the shop at the time of the incident. (Trial Tr. (Dkt. 13-3) at 420.) A series of telephone calls between Petitioner's cellphone and that of Mr. Gause, a third barber present at the shop during the shooting, revealed Petitioner's flight away from the vicinity of the Hut Barbershop immediately after the incident. (Id. at 450-88.) This conflicted with Petitioner's alibi that he was not in Queens at the relevant time (Trial Tr. (Dkt. 13-4) at 743-44.) It does not seem unreasonable that the state court found that the jury would still have believed Mr. Lee's testimony even if an interested witness charge had been requested. This is especially true given the totality of the evidence as well as the fact that the jury was not ignorant of Mr. Lee's potential gain. See Strickland, 466 U.S. at 691-96. Under the deferential standard of AEDPA, this court does not find that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 699.

In sum, Petitioner in the instant case does not meet the doubly deferential standard of Strickland and the additional overlay of AEDPA over claims of ineffective assistance of counsel

in habeas petitions. <u>Harrington</u>, 131 S. Ct. at 788. The failure of Petitioner's trial counsel either to request the lesser included charge of second-degree manslaughter, or to request an interested witness charge, did not violate Petitioner's Sixth Amendment right to effective assistance of counsel.

## IV. CONCLUSION

For the reasons set forth above, Poux's Petition for Writ of Habeas Corpus is DENIED. As Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue with respect to his claims. 28 U.S.C. § 2253(c)(2). <u>See</u> 28 U.S.C. § 2253(c)(2). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
     May _5_ , 2014

NICHOLAS G. GARAUFIS  
United States District Judge